## Wilson *versus* Wilson.

An agent whose authority is limited by instructions, is in general bound to obey such instructions *exactly*—if they be imperative and not discretionary.

To make instructions imperative, it is not necessary that they should be given in the form of a command; the expression of a wish will be presumed to be an order.

It is not sufficient to authorize a departure from instructions, that they are not material, if the party giving them deemed them so, unless it be shown affirmatively that the deviation in no manner contributed to the loss.

Instructions to remit money through the mail in notes of a specified denomination, are not complied with by remitting notes of a smaller denomination and a greater number.

ERROR to the Common Pleas of *Blair county*.

This was an action of *assumpsit* brought by Thomas Wilson against Matthew C. Wilson, to recover certain money which the defendant, who resides in Blair county, Pa., had received for the plaintiff, a resident of North Carolina. While the money was in the hands of the defendant the plaintiff wrote him the following letter, dated 2d May, 1851:—

"There is a matter I have insisted to know and which is due to every one of the heirs and it is this sir, the amount of all dues against and in favour of the estate in bonds notes book or proven accounts, that each one may see the amount of money due them, as to the balance of mine I don't say I must have it but that I would like to have at least $250 as soon as you can send it, or $300 would not come amiss. You can send inclosed in a letter in $50's or $100 notes on par banks, direct your letters to Cedar Grove as heretofore and the receipt I will send as soon as the money is received by me, for whatever amount you send me. Only be careful and send it carefully folded up and sealed."

The defendant, on the 24th May, 1851, purchased $300, chiefly in bills of North Carolina banks, in all, eighteen bills, of the denomination of $5, $10, and $20, and one of $100, and enclosed the same in a letter carefully folded and sealed in an envelope, and directed to the plaintiff at Cedar Grove, Orange County, N. C. This letter was mailed and forwarded, but never reached its destination.

This action was brought to recover the amount, on the ground that the defendant had assumed the risk of the remittance by enclosing a larger number of bills, and of smaller denominations, than directed in plaintiff's letter.

The defendant contended that the instructions were substantially complied with, and that the departure, if any, was not material, and did not increase the risk.

Witnesses were called on both sides, whose opinions differed as

[Wilson *v.* Wilson.]

to the relative risks of large or small packages of money sent by mail.

The court below (TAYLOR, P. J.) instructed the jury as follows:

" The remittance was at the risk of the plaintiff, and a payment of the claim, if it was made in conformity, substantially, with the plaintiff's instructions. The directions were substantially complied with and pursued, if there appears to have been no departure which materially increased the risk of remittance; while on the other hand if there was such a departure, there was not a substantial compliance, and the risk and loss would fall upon the defendant. Of this you will judge from the evidence.

" The evidence reviewed, and the cause submitted upon the question as above stated."

The jury found for the defendant.

Whereupon the plaintiff removed the cause to this court, and assigned the charge for error.

*Calvin*, for plaintiff in error.

*Blair*, for defendant in error.

The opinion of the court was delivered by

LEWIS, C. J.—The primary obligation of an agent, whose authority is limited by instructions, is to adhere faithfully to those instructions, in all cases to which they ought properly to apply: *Story on Agency*, § 192. He is in general bound to obey the orders of his principal *exactly*, if they be imperative and not discretionary; and, in order to make it the duty of a factor to obey an order, it is not necessary that it should be given in the form of a command. The expression of a wish by the consignor may fairly be presumed to be an order: *Story on Contracts*, § 359, Brown *v.* McGran, 14 *Peters* 494. It is true that instructions may be disregarded in cases of extreme necessity arising from unforeseen emergencies, or if performance becomes impossible, or if they require a breach of law or morals: *Story on Agency*, § 194. These are, however, exceptional cases. There may, perhaps, be others which have been sanctioned by adjudications, founded on the principle that the departure complained of was not material. But the general rule is as indicated in what has been said, and the case before the court is not brought within any of the exceptions. To justify a departure from instructions, where a loss has resulted from such deviation, the case must be brought within some of the recognised exceptions. It is not sufficient that the deviation was not material if it appear that the party giving the instructions regarded them as material, unless it be shown affirmatively that the deviation in no manner contributed to the loss. This may be a difficult task, in a case like the

[Wilson v. Wilson.]

present; but the defendant voluntarily assumed it when he substituted his own plan for that prescribed by the plaintiff. To force a man to perform an executory contract after substituting for the consideration other terms than those provided for in the bargain, is to deprive him of the right to manage his own business in his own way. · To do this on the ground that the departure is not material, when it is manifest that the party considered it otherwise, is a violation of private right, which leads to uncertainty and litigation without necessity or excuse. In Nesbit v. Burry, 1 *Casey* 210, this court refused to compel a man to give up his oxen although he had sold them and received part of the purchase-money, because it was a part of the contract that they were sold by weight, and the weight was to be ascertained by "the scales at Mount Jackson." The scales designated were so out of repair that the weight could not be ascertained by them, and it was held that no others could be substituted against his consent so as to divest his right of property. Whether an action for damages could have been sustained was not the question there; nor is it the question here. As between vendor and vendee, the right of property and the consequent risk vests on delivery of the goods purchased to the designated carrier, packed, and directed according to usage or instructions. But if a different method of packing and directing, or a different carrier than the one designated, be adopted by the vendor, he assumes the risk in case of loss, unless it be shown that his deviation in no way contributed to the loss. Where the goods are stolen, how can this be shown? In sending bank-notes by mail, it is manifest that while a large package would attract the attention and care of honest agents on the route, it might tempt the cupidity of dishonest ones. The party who proposes to take the risk of this method of remittance has a right to weigh the advantages and disadvantages of the various methods of enclosing the notes; and if he directs the money to be remitted in notes of $100 or $50, the debtor has no right to increase the size of the package by remitting in notes of $10 and $5. There was error in permitting the jury to find that the departure from instructions was immaterial.

Judgment reversed and *venire de novo* awarded.