# The London Assurance Corporation *v.* Henry Z. Russell, Appellant.

*Insurance policy—Notice to cancel—Mailing letter—Evidence.*

Depositing in the postoffice a properly addressed, prepaid letter raises a natural presumption, founded on common experience, that it reached its destination by due course of mail. Mailing a letter in such a way is prima facie evidence that it was received by the person to whom it was addressed, but such prima facie proof may be rebutted by evidence showing that it was not received.

In the case at bar there was proof in regard to mailing a letter directing a policy to be canceled which was as full and positive as could be expected in the case of a business in which many letters are handled daily. The addressee denied receiving it. *Held*, that the evidence was sufficient to leave to the jury the question whether the notice had been received by defendant: Jensen *v.* McCorkell, 154 Pa. 323, followed.

*Insurance—Agent must obey order to cancel policy.*

An agent is bound to obey the imperative order of his principal, and in order to make it the duty of a factor to so obey the order it is not necessary that it be couched in the form of a command. One who receives orders to cancel an insurance policy delays their execution at his peril.

*Failure of company to tender agent return premium.*

The failure of the company, in absence of any demand therefor, to offer the agent in advance the return premium, will not acquit the agent from his duty to effect a cancellation, when the custom of the agent had been to cancel policies under notice and settle with the company in his monthly returns, and when, before the time of the loss, the agent had funds of the company in his hands in excess of the sum needed for the return premium on the policy, the cancellation of which was directed.

*Insurance—Agent's failure to cancel—Negligence—Damages.*

Where the negligence of an agent compels his principal to be liable for the face of a policy which he had it in his power to cancel and which he had been directed to cancel, the measure of damages will be the sum for which the loss was adjusted. The return premium which would have been allowed had the policy been canceled cannot be taken into consideration, as the consideration therefor could only have been the cancellation.

*Insurance—Contributory negligence of company—Cancellation of policy.*

Where an insurance company has directed its agent to cancel a policy it is not guilty of contributory negligence if it fails to act outside of said agent and cancel said policy itself. The company had a right to rely on its agent's obedience to positive directions to cancel, and presume that they would be obeyed, the disobedience of the agent being at his peril.

*Practice, Super. Ct.—Defective assignments.*

Assignments alleging error are defective under rule 17 of the Superior Court, which, in alleging error as to admission of evidence, fail to set out in the assignment the evidence and rulings thereon which may be objected to, and which supplement the text of the assignment by reference to the matter set out in extenso in the appendix.

Argued Jan. 20, 1896. Appeal, No. 13, Jan. T., 1896, by defendant, from judgment of C. P. Wayne Co., Dec., T., 1893, No. 11, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed. RICE, P. J., dissents.

Trespass for negligence by defendant as agent for plaintiff.

The declaration alleged negligence by defendant as agent for plaintiff in that he did not use due and reasonable care, diligence and skill, promptly to carry out orders of the plaintiff to terminate and cancel a certain policy of insurance issued by the plaintiff to Joseph Atkinson on his sawmill and other property, which mill was destroyed or partly destroyed by fire April 24, 1893, whereupon the plaintiff was obliged to pay to Joseph Atkinson the sum of $620. Defendant pleaded not guilty. The case was tried before PURDY, P. J., and a verdict rendered for plaintiff for $700.56.

The facts are fully set out in the opinion of the Superior Court.

*Errors assigned* were:

Assignments of Error.                    [1 Super. Ct.

(1) In overruling defendant's objection to the admission of the letter of April 12, 1893, marked " Exhibit K," the full text of the letter being found on page 47 of appendix to appellant's paper-book, and the offer, objection and bill of exceptions being as follows, App. 36.

Judge Wilson: The counsel for the plaintiff offer the copy of the letter in evidence.

Mr. Greene: The counsel for the defendant objects to the offer on the ground that sufficient ground has not been laid for the admission of the letter in evidence.

The Court: The evidence is admitted.

Exception noted for defendant at whose request a bill is sealed. See also App. 42.

Mr. Greene: We object further that the signature of Mr. Case as manager has not been identified.

The Court: I think the witness Van Orden testified that this letter was copied by him in the office of the company and sent by him. The objections are overruled and letter admitted.

Exception noted for defendant at whose request a bill is sealed. See also App. 46.

The counsel for the plaintiff offer in evidence " Exhibit K," being a copy of letter dated April 12, 1893, signed by Charles L. Case, manager, by Peck; addressed to Henry Z. Russell, Esq., Honesdale, Pa., as secondary evidence of a letter written upon that date and mailed to that address.

Mr. Greene: The counsel for the defendant objects to the offer.

The Court: The evidence has been admitted once under objection. It is proper for it to be read.

(2) In overruling defendant's objection to the testimony of the plaintiff's witness, E. J. Calley, on rebuttal, the testimony, objection and bill being as follows, App. 105.

Question by Mr. Searle, plaintiff's counsel:

Mr. Russell has testified that you handed this statement of policies you desired to have canceled to the clerk; state whether that is the fact? A. I did not.

Mr. Greene: The counsel for the defendant objects to this as not rebuttal.

The Court: The objection is overruled.

Exception noted for defendant, at whose request a bill is sealed.

Mr. Searle: Q. What do you say? A. I handed that memorandum to Mr. Russell himself, in person. Q. And not to the clerk? A. Not to the clerk.

(3) In charging the jury as follows:

Mr. Calley, the special agent of this company, says that it was not customary for the company to cancel policies without the intervention of the agent; that they had no right to ignore the agent in the matter.

(4) In charging the jury as follows:

The presumption is that if a letter is mailed, placed in charge of the U. S. postal authorities, or in any receptacle provided for depositing mail matter, properly addressed, that it reaches its destination.

(5) In the answer to the defendant's fifth point, which point with the answer thereto was as follows:

Fifth. The plaintiff having the power to terminate the policy in question on five days' notice, and having permitted it to run between three and four months after the order had been given to cancel it, was guilty of such contributory negligence as will defeat its action in this case. *Answer:* That is refused.

(6) In charging the jury as follows:

If the plaintiffs are entitled to recover in this case they are entitled to recover compensation for their loss. The loss in this case was adjusted at $620, and that was done with the acquiescence of the defendant. With this amount no complaint is made that it was a fair adjustment of the loss, and it appears that the plaintiffs in this case paid to Atkinson $620 on or about the 2d day of August, 1893. It appears also that the direct expenses incurred by the plaintiff with respect to their loss are $13.20, which expenses were paid to the agent whom they sent here, by the plaintiff, making a total of $633.20 claimed by the plaintiff in this case, and if they are entitled to recover, they are entitled to recover interest on the sum paid by them, from the time of its payment to this time, which it appears was August 2, 1893.

(7) In the answer to defendant's sixth point, which point with the answer thereto was as follows:

Sixth. The plaintiff having brought suit for and claimed, and attempted to prove on the trial of this case a specific sum as damages, viz: $620 loss paid to Jos. Atkinson and $13.00

for expenses, and it not being disputed that this was the amount of loss paid and of expenses incurred, the jury must find a verdict for this amount or else find generally for the defendant. But as this amount includes the amount of return premium which would have been paid to Joseph Atkinson in case the policy had been canceled according to instructions, and as such amount of return premium cannot be recovered in this case, the verdict of the jury must be for the defendant. *Answer:* That is refused.

(8) In the answer to defendant's seventh point, which point with the answer thereto was as follows:

Seventh. The plaintiff not having paid or offered to pay to the defendant the amount of return premium which would by law have been refunded to Joseph Atkinson if his policy had been canceled by the defendant in accordance with the instructions to do so given to defendant by plaintiff, the plaintiff cannot recover in this case. *Answer:* That is refused.

(9) In charging the jury as follows:

Gentlemen, we say to you that the evidence in this case establishes such a course of dealing between these parties, and such a general custom with regard to cancellations, as made it incumbent upon the defendant to obey the orders of his principal in that respect, and if he declined to do so for want of funds it was his duty to make this fact known to the plaintiff.

(10) In the answer to the defendant's eighth point, which point with the answer thereto was as follows:

Eighth. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer:* That is refused.

*Homer Greene,* for appellant.—The presumption as to the mailing of letters is confined to protest of commercial paper and notice of loss by the assured to the company, but in Pennsylvania it is not the presumption so far as any other correspondence is concerned: Tanner v. Hughes, 53 Pa. 291; Kenney v. Altvater, 77 Pa. 38; Bank v. McManigle, 69 Pa. 159; Railway Co. v. Henrice, 92 Pa 434.

While it is true that an agent who, by neglect and want of diligence, fails to collect money of his principal, loaned by him, is liable for the loss, still he will not be liable if the exercise of reasonable care on the part of the principal could have pre-

vented the loss: Railroad Co. v. Walker, 49 Iowa, 273 ; 1 Am. & Eng. Ency. of Law, 372 n.; Colt v. Owens, 90 N. Y. 368.

Facts which fairly lead to a conclusion and guide the jury in fixing the amount of the loss must be laid before them: Keiser v. Gas Co., 143 Pa. 291 ; Rogers v. Davidson, 142 Pa. 440. It is undoubtedly the duty of the court to instruct the jury upon the question of damages and to lay down a rule by which they can ascertain the damages in an intelligent manner: Stephenson v. Brown, 147 Pa. 301.

There is a vast difference between a direction of an insurance company to its agent to cancel a policy which has not been approved by them and to cancel one which has: Kraber v. Union Iusurance Co., 129 Pa. 8.

*H. Wilson, A. T. Searle* with him, for appellee.—As to fourth assignment of error : This assignment does not quote enough of the charge to show the full instruction on the point in question. The charge on this point is fully sustaiued by the authorities: Whitmore v. Ins. Co., 148 Pa. 405. In other words it is prima facie evidence that a letter was received by the person to whom it was addressed; that prima facie proof may be rebutted by evidence showing that it was not received. The question is necessarily one of fact, solely for the determination of the jury, under all the evidence : Folsom v. Cook, 115 Pa. 539; Ins. Co. v. Toy Co., 97 Pa. 424; Huntley v. Whittier, 105 Mass. 391 ; Briggs v. Hervey, 130 Mass. 188. Under the rule laid down in Kraber v. Ins. Co., 129 Pa. 8, it was the agent's duty to cancel the policy when so instructed by his principal. The agent is bound to follow such instuction, and is liable for loss resulting from his failure to do so.

OPINION BY ORLADY, J., February 20, 1896.

The defendant, as agent of the plaintiff, on September 11, 1892, placed a risk for the term of one year, upon a sawmill property of Joseph Atkinson, for the plaintiff corporation. In January following, the assurance company, by its agent, directed the defendant by the following: " Office of Henry Z. Russell, General Insurance Agent, Honesdale, Pa., January 6, 1893. Take up No. 1349331, Joseph Atkinson," and eight other policies by number and name of assured. On April 24th

next, the Joseph Atkinson property as described in the policy was destroyed by fire, and in settlement of its proportion of the loss, the plaintiff paid the assured $620. This action is brought against Henry Z. Russell to recover damages for the alleged negligence in failing to take up and cancel the Joseph Atkinson policy. A verdict of $700.56, was recovered against the defendant, and judgment entered thereon. The first and second assignments of error are not in form as required by rule 17 of this court, and for this reason would properly be disregarded; but after examining five different references to the testimony in the appendix of appellant's paper-book, they are, with the fourth, found to be without merit, even if properly stated. They refer to letters passing between the home office in New York and the defendant at Honesdale, particularly one of date of April 12, 1893; the objection to their admissibility being want of sufficient proof of mailing to entitle them to be read in evidence. The proof in regard to mailing the letter of April 12, 1893, was as full and positive as could be expected in the case of a business in which many letters are handled daily. In Whitmore v. Dwelling House Insurance Company, 148 Pa. 405, the Supreme Court says: " It is well settled that the fact of depositing in the post office, a properly addressed, prepaid letter, raises a natural presumption, founded in common experience, that it reached its destination by due course of mail. In other words, it is prima facie evidence that it was received by the person to whom it was addressed: but that prima facie proof may be rebutted by evidence showing that it was not received," which was adopted in Jensen v. McCorkell, 154 Pa. 323, in which case the trial judge in his charge said, " The United States government has taken hold of the distribution of the mails, and, in the city of Philadelphia, letters deposited in the mail are delivered daily, and where there is on the back of an envelope a stamp of the name of the person who sends letters, the letters are returned, if they are not delivered. Under this condition of things I instruct you there is a presumption when the letter is mailed to the proper address within the city, that it is delivered in accordance with the direction. In the case at bar that presumption is strengthened by the undisputed evidence that the name and address of the notary were stamped on the envelope covering the notice of protest. So greatly, indeed,

does that fact strengthen the presumption, that it becomes well nigh conclusive. At least it would be entitled to considerable weight in connection with other facts and circumstances of the case." The trial judge in the present case said, "The presumption is that if a letter is mailed, placed in charge of the United States postal authorities, or in any receptacle provided by them for depositing mail matter, properly addressed, that it reaches its destination; that presumption, however, may be rebutted. Mr. Russell testifies that he did not receive the letter. . . . We think, gentlemen, that it is our duty to say to you that the only question of fact in this case, to be considered by the jury as constituting a defense to this action, is whether Lowry had authority to suspend the order of cancellation which had been previously made by the company, and if so, whether he did suspend it, and if he did suspend it whether the defendant received the letter of April 12, 1893. We say to you, if you should find that Lowry had the authority to suspend the order of cancellation, and if you should further find that he did suspend it, then the letter of April 12, a copy of which has been given in evidence here, had the effect of reaffirming the order of cancellation; but if the defendant did not receive that letter, if you should find that Lowry had the authority to suspend the order of cancellation, and did suspend it, then if the defendant did not receive that letter, if you should believe that, it would be inoperative as to him."

The question was fairly submitted to the jury under proper instruction, and the defendant had every advantage of his positive denial of the receipt of the letter.

He admits receiving on January 6, the notice in the handwriting of Mr. Calley, the recognized agent of the company, naming nine risks, identified by their policy number and name of assured from his own register of insurance, which were to be taken up and dropped; in which list was the Joseph Atkinson, the return premium of which at that time was valued at $29.60; that of the policies named on the list, between the dates of January 14 and February 25, he did take up and cancel five, allowing credit to the assured, or paying in cash $79.95, as return premium, for the reason, as given in his own words: "I canceled those policies, simply as an accommodation to the company, sir," and included the amount of the return premiums in his

monthly settlements for January and February. He admits further, that about March 18 he told a Mr. Lowry, a special agent of the company, with the list then before them, " Mr. Calley had put that particular policy down on his list as one of the policies that he wanted canceled, and I told Mr. Lowry that I thought that was very unfair and unjust to ask for the cancellation of that policy, from the fact that Mr. Atkinson had had a policy in that company for at least ten years, right straight along, year after year, and had paid in premiums nearly the face of the policy, and under those circumstances I thought the company would allow it to run until its expiration, which would be in less than six months." The five risks canceled by Russell in the assurance corporation were at once placed by him in other companies of which he was agent, and further he said : " I knew Joseph Atkinson had a policy in the Assurance Corporation, and I didn't want it cancelled because he had been in the company so long and Mr. Atkinson had been a very good customer of mine, and I didn't want to cancel the policy." And in interpretation of the notice left with him by Mr. Calley, he says : " If I say I think he ordered those policies canceled, I think it is right. If I say I think he left that list in my office, I think that is right. That is just the same as an order to cancel, although it is irregular. I mean that those two words ' take up ' mean to cancel. Every policy I took up was a loss to me. The meaning of this paper is to take up, that means to cancel." The letter complained of in the first and second assignments is as follows : " April 12, 1893, Henry Z. Russell, Esq., Honesdale, Pa. Dear Sir :—We beg to say that on referring through our suspense files, we find policy . . . . and 1,349,331, Joseph Atkinson, have all been at various times and repeatedly, ordered canceled from this office. . . . We beg that you will give this important matter your prompt attention, much obliging, Yours very truly, Charles S. Case, Manager, P."

The conduct of the defendant indicated a determination on his part to manage the business of his principal in accordance with his standard of business propriety and not theirs,—to determine what risks he would permit them to cancel.

The fifth assignment of error " The plaintiff having the power to terminate the policy in question on five days' notice, and having permitted it to run between three and four months after

the order had been given to cancel it, was guilty of such contributory negligence as will defeat its action in this case," which was refused by the court. In the defendant's testimony the plaintiff company is relieved entirely of any charge of contributing to this loss, as the letters produced by the defendant clearly show that the company relied on their first notice through their representative, Mr. Calley. The primary obligations of an agent, whose authority is limited by instructions, is to adhere faithfully to those instructions, in all cases to which they ought properly to apply. He is, in general, bound to obey the orders of his principal exactly if they be imperative, and not discretionary; and, in order to make it the duty of a factor to obey the order, it is not necessary that it should be given in the form of a command. The expression of a wish by the consignor may fairly be presumed to be an order. Wilson v. Wilson, 26 Pa. 393. One who receives orders to cancel a policy delays their execution at his peril: Phœnix Ins. Co. v. Pratt, (Minn.) 31 N. W. R. 454; Washington etc. Ins. Co. v. Cheseboro, 35 Fed. R. 477; Franklin Ins. Co. v. Sears, 21 Fed. R. 290.

The sixth assignment is the charge of the court, fixing the measure of damages as follows: "If the plaintiffs are entitled to recover in this case, they are entitled to compensation for their loss. The loss, in this case, was adjusted at $620, on or about the 2d day of August, 1893; it appears also that the direct expense incurred by the plaintiffs with respect to their loss was $13.20, which expenses were paid to the agent whom they sent here, making a total of $633.20, the amount claimed by the plaintiff in this case, and if they are entitled to recover, they are entitled to recover interest on the sum paid by them from the time of its payment to this time," and in the answer to the defendant's sixth point, as follows: " But as this amount includes the amount of the return premium, which would have been paid to Joseph Atkinson in case the policy had been canceled according to instructions, and as this amount of return premium cannot be recovered in this case, the verdict of the jury must be for the defendant," which was refused. The point states the fact erroneously. The amount, $633.20, did not include any sum as return premium, nor had the return premium been considered. The negligence of the defendant compelled

his principal to be liable for the face of the policy; he had it in his power to cancel the contract for insurance, by which the company would have been relieved from all liability, and the assured would have received the return premium; but elected to disobey his instructions and is not entitled to credit in this action for the money Joseph Atkinson might have received, if he had discharged his duty. He surrendered nothing for the return premium. The liability was the company's, not his. The consideration for the return premium, if it had been paid, would be the cancellation of the insurance risk.

The defendant's seventh point: "The plaintiff not having paid or offered to pay to the defendant the amount of return premium which would by law have been refunded to Joseph Atkinson if his policy had been canceled by the defendant, in accordance with the instructions to do so given to defendant by plaintiff, the plaintiff cannot recover in this case," which was refused. There was no proof that any request had been made by the defendant of the company for the amount of the return premium due under the cancellation of any of the nine policies. The defendant admitted canceling five under the notice, as he received it, and settling with the company in his monthly returns of January and February, allowing a credit to the assured, or paying him cash, $79.95. The evidence further shows that on April 1st, more than three weeks before the fire occurred, he had fully reimbursed himself from other premiums received, and had at that time in his hands $61.95 of the money of his principal.

An agent has no legal right to sit in judgment upon the wisdom or expediency of the instructions of his principal, and his failure to execute them with reasonable promptness and fidelity will render him liable to his principal in damages: Kraber v. Insurance Co., 129 Pa. 8.

The charge of the court was full, clear and fair, and the judgment is affirmed.

RICE, P. J., dissents.

WILLARD, J., did not sit at the hearing.